And we'll call the next case, DEOP versus ICE Homeland Security. This case is somewhat consolidated, but initially it was because we had some concern about whether we would have enough attorneys to argue the many issues here. Apparently we do. Now we have a wealth of britches, but we'll keep it somewhat separate anyway. So we're going to start with DEOP, which I think is at the request of counsel. And first would be Ms. Rabinowitz. Our plan was to just, I would argue DEOP, and Mr. Pan would argue Ali, and then the government will argue the two. What would you prefer? Oh, what do you prefer? All right. Maybe since the issues are somewhat discreet, we'll stay with DEOP and we'll get the government's response. Okay. Do you want to do it that way? Either way is fine with us. Okay. You're going to start anyways. Okay. Good morning, your honors. May it please the court, my name is Judy Rabinowitz, and I represent the amici in this case, the ACLU of Pennsylvania, and we're arguing on behalf of, I'll be arguing on behalf of the appellant, Mr. DEOP. As I just mentioned, my colleague, Mr. Tan, will be arguing the Ali case on behalf of the appellants there. I'd like to reserve two minutes for rebuttals. Very well. Your honors, the issue in this case is whether the government can lock people up for prolonged periods of time without even providing them with a bond hearing. And Mr. DEOP is a prime example. He's been locked up now for nearly three years, even though he poses no danger of flight risk, and even though the government itself concedes he has a meritorious claim for both withholding of removal and protection under the Convention against Torture. Does it matter that much of the delay might have been caused by his various applications and appeals and so forth, or is that, should we disregard that? Yes, your honor, you should disregard that. The fact that an individual seeks relief from removal does not remove, does not immunize their detention from the due process constraints. If you look at the, I mean, if you look at any other situation, the government has, I mean, there's no other situations where an individual can be locked up for this length of time without even a bond hearing. We're not talking about whether he could be locked up at all. We're talking only about a bond hearing. Well, hold on, you say he's never had a bond hearing. I mean, doesn't the record reflect, or at least your adversary says they had a Joseph hearing. Is that not sufficient? Well, first of all, your honor, I'm not sure whether he did have a Joseph hearing. I'm not sure that the record does, is clear on that. It only says... Let's talk about that, because, I mean, doesn't the record say, I mean, at least he appeared before an immigration judge, and some hearing happened. I guess, is your point that there's no transcript of it, so you're not sure exactly what transpired? Yeah, we don't know what transpired, but regardless, your honor, even if, I mean, the judge said you're not eligible for bond, we don't know what else the judge did. But regardless, that's not the kind of bond hearing we're talking about. We're talking about a bond hearing where there's an individualized determination as to whether Mr. Diop poses a danger of flight risk. Notably, the government has never suggested he poses a danger of flight risk, yet they take the extreme position that he can be locked up for as long as it takes, regardless of how long it is, regardless of whether he poses any danger of flight risk. But unlike Zavidas, though, I mean, and the court in... I'm going to get the pronunciation wrong, but maybe just DeMoore. DeMoore, yeah. Didn't the court distinguish Zavidas and the fact that deport or removal proceedings are finite, there will eventually be an end point? Yes. I agree. Three years is a long time. Yes, definitely, your honor. The court did distinguish that. And we're not claiming that Mr. Diop's detention is indefinite in the same way as Zavidas. Clearly, it does have an end point. But the mere fact that the detention has an end point doesn't mean that it's not subject to due process constraints. The due process issues are important. I'm sure you're going to get to them, but I just wanted to get a little background if you can. The basis for the proposed deportation is a conviction for reckless endangerment, I understand. There's actually... And you say that there is no moral turpitude involved with that type of conviction. Yes, that's somewhat of a separate issue, and I'd like to clarify. It might be a little bit, but I just wanted to get an idea of what constituted the reckless endangerment here. Here, he was fleeing a police officer. Okay. But I want to go back to the core of the situation here, which is, is there a limit on how long somebody can be subjected to mandatory detention without a bond hearing? And the government takes this extreme position. We believe it's extreme. It doesn't matter how long the proceedings take. There's no limit. And we're... Has the Supreme Court suggested that at some point, detention is unreasonable? Well, I think what's important... I think what's important is that the Supreme Court has not reached this issue. The government relies on Damore, the case that Judge Chigaris is referring to. The government really basically bases its whole case on Damore, which uphelds the constitutionality of mandatory detention. But importantly, Damore is not as broad as the government claims, or as the district court found. It's a more limited ruling. The court upheld the mandatory detention of somebody who had conceded that he was subject to the statute and deportable under the statute for the brief and limited period of time of removal proceedings. And that reference, that emphasis on the brief and limited period of time, runs throughout Damore. Justice Kennedy, in one of his conferences, did say that unreasonable detention may have constitutional implications. But my question to you is, how do you determine when detention is unnecessary? Well, that's a good question, Judge Fuentes. I think that in this case, it's one you don't necessarily have to grapple with. We think you should, in terms of issuing a precedential decision. But we think that under any reading, three years of locking somebody up without a bond hearing is unreasonable. Particularly because in Damore, the court kept on saying, a brief and reasonable period of time, they were considering contrasting it to Zadvydas, where the court had set up a six-month rule. So they kind of had that six-month rule in the background when they were saying this. And they specifically said that on average, 85% of these hearings only last 47 days. And only in 15% of the cases do they last five and a half months. Would you suggest that a detention beyond six months, as stated in one of the Supreme by a congressional statement, might be presumptively unreasonable? Yes, that's our position, Your Honor. Our position is that that's the rule that this court should adopt. That the first step would be to say that this mandatory detention statute does not authorize unlimited detention, to reject that position. And that's the position that's consistent with what the two other circuits that have addressed this issue have held, and that's the Sixth and the Ninth. And so the statute needs to be construed as authorizing detention only for a period of time reasonably necessary to conclude removal proceedings. We agree that we think that six months should be considered the presumptively reasonable period for removal proceedings, after which the mandatory detention statute no longer applies. Instead, detention reverts to the general detention statute, 1226A, which authorizes detention, but authorizes detention with a bond hearing. Now, I don't understand quite, I think I understood that that is your position, that there's a reversion from one section of the statute to another, but I don't know how you read that out of the statute. The way, Your Honor, the statute for detention pending removal proceedings is 1226. It's 8 U.S.C. 1226. 1226A says individuals may be detained except as set forth in 1226C, and it says may be detained, and that has been interpreted to mean may be detained with a bond hearing, and that's what happens, the regs provide a bond hearing. It said except as provided in 1226C. 1226C is the mandatory detention statute, so that's the exception to discretionary detention. And it says that the government shall detain individuals who have been convicted of designated crimes and shall not release them. Significantly, though, it does not say for how long it shall detain them. And so all that we are saying, and this is consistent with how the Supreme Court interpreted the post-final order detention statute in Zadvydas, we're simply saying that the silence as to the time, it doesn't impose a time limit, but that the lack of a time limit does not mean it implies indefinitely. Instead, shall detain should be read to mean shall detain for a reasonable period of time. And this is the position that, as I said, both the Ninth Circuit and Judge Boggs in the Sixth Circuit adopted, and in doing so, he made two points. He said this both avoids the serious constitutional problems that would be created if the statute was read to authorize unlimited mandatory detention. Just to follow up on that, supposing that you were right and we were to agree and the alien were granted a, we would order the alien be granted some form of detention here, at which the government will show that the alien is a danger to the community or poses a flight risk. What happens after that? Well, if the government shows, meets its burden of showing that the individual's a danger or a flight risk, then the individual remains in detention. Okay. I would say... You're not suggesting repeated hearings. You're... Well, we have not gotten to that issue, Your Honor. I would say that there probably would need to be repeated hearings in another six months. I've seen them... This case may take another year or two. Right. I would say, and this is also consistent with Congress in terms of Congresses having recognized that six months as a period that sort of creates more of a need for additional procedures. For example, in both the Patriot Act provision that authorizes detention for people who are considered to be terrorists and under the terrorist removal provisions, both of those statutes say that for detention beyond six months, there needs to be these six-month reviews. So we're not pulling six months out of a hat for a number of reasons. I mean, six months is a period of time that Congress itself has noted raises certain red flags and is a period of time for which you would expect to have greater procedural protections. What is the... What do you take to be the significance of the presumptive six months? Six months elapses... You want this court to announce presumptively six months is all you've got. Right. Then what happens? Our position would be then the individual has a bond hearing and the burden shifts to the government to show that detention is justified. So then you want presumptive... We really eliminate the presumption and you're saying that this court should announce that after six months there's a bond hearing. Yes, Your Honor, you're right to draw that distinction. Alternatively, that bond hearing, the first issue to be considered in the bond hearing could be whether the six-month presumption applies. And it would be of no importance whether three months of the six months were consumed by the petitioners asking the IJ or the BIA for some form of relief. Well, I have two responses to that, Your Honor. First... Well, there's some suggestion, it seems to me, even in DeMoore that, well, the petitioner here has been asking for relief administratively. You're right, Your Honor. And to the extent that an individual engages in dilatory conduct in the six months as the result of that, that's something that an immigration judge can consider in terms of whether the individual is entitled to a bond hearing in the first place. So that's what I mean by the presumption. It also is part and parcel of what an immigration judge is going to look at. If the immigration judge thinks this individual is delaying proceedings, is engaging in frivolous conduct, then presumably the immigration judge would find that they're a flight risk and they're not entitled to release. But in terms of us saying a presumption, you could also say that at that bond hearing, the initial determination is, you know, does the presumption apply here? Why doesn't the JOSEPH hearing satisfy that requirement in as much as, for example, a person arrested for a crime or some serious offense is given a bail hearing? But it doesn't mean that six months later that initial bail determination has to be revealed because there's a presumption that he or she shouldn't be there. Right. But there's two separate issues, Judge Gwendolyn. There are. The JOSEPH hearing does not go into the question of danger or flight risk. The JOSEPH hearing is simply, do you fall under the mandatory detention? I guess this is important because that's what the statute. Right. Do you fall under the statute? That's all that the JOSEPH hearing is. And we have a separate, the petitioner, I mean, the appellant here has a separate argument as to why he believes the JOSEPH standard is wrong. You don't need to address that. The primary argument here has to do with length of detention, so you don't need to get into that. But in any event, that JOSEPH hearing has nothing to do with danger or flight risk. So all that it is, is the government says you are subject to this statute and therefore end of story. Let me ask you a question. It may not be exactly this case, but let's say the government was engaged in foot dragging. In any case, a person's being detained and the government is, the IJ or somebody, they're just not scheduling anything. What recourse does an alien have? I mean, can you bring in a Davis action? Is there something in the code that would grant some relief? That's a good question, Your Honor. I think that generally what you can do is make a motion to expedite proceedings. That doesn't necessarily work. I'm not sure that you could. My guess is that you would not succeed on a mandamus unless it was really egregious because... I mean, let's say it was three years in this case and there were no proceedings. They were just sitting, waiting and waiting and waiting. I guess he'd file a mandamus under those circumstances. I would assume... Is there anything in the code that you're aware of, the immigration code? Well, the only thing that's in the code is there is a statute which says that these proceedings, particularly against immigrants with criminal convictions, are supposed to be expeditious. And that's one of the statutes that Judge Boggs and Lee pointed to for why the limiting construction of the statute makes sense. It's consistent with Congress's intent. But the courts have found that that does not provide a private right of action. So an individual cannot go in. That's a requirement that the government expedite proceedings. But it doesn't give the individual the right to go in and say, they're not expediting my proceedings. Please make the move. Thank you, Ms. Richardson. We'll get you back on the phone. Okay, thanks. Ms. Prairie? May it please the Court, Nicole Prairie for the appellees. This case involves an alien who is properly detained pursuant to the mandatory detention statute imposed by Congress and upheld by the Supreme Court as permissible under the Constitution. Therefore, this Court should affirm the district court's findings that his detention is per se constitutional under 8 United States Code Section 1226C and DeMoor v. Kim. Can you defend this idea that under 1226, the government can detain an alien? Indefinitely? Five years? Seven years? Without any kind of hearing concerning the justification for the detention? Well, Your Honor, and I think what the United States Supreme Court laid out in DeMoor was that removal proceedings are by nature definite. There will be a termination point. And one thing we did want to raise with this Court was... Well, but sometimes, you know, there's been a case with a termination point of seven years and five years. I mean, at some point, don't you have to say detention is just too long? Maybe we should determine whether there's a justification, there's a fight risk, or this person's a danger to the community? Well, the government's position is that Congress created the statute, 8 United States Code Section 1226C, to impose mandatory detention for certain criminal aliens. In this case, Mr. Dieppe has been found to have been convicted of a crime involving moral intrepidude, which places him under the mandatory detention statute. He had the opportunity to raise it in front of the Immigration Court to say he wasn't properly being held pursuant to that mandatory detention statute, and he chose not to appeal that decision. So your best argument is 1226 says we can do it, and therefore we can do it? And there is a termination point to these proceedings. And one thing we did want to point out was that the government learned last week that  his plea for expedition had been withdrawn, and so last Thursday, the government did file a motion to expedite and try to get a first available hearing on his withholding of removal claim. Last Friday? I'm sorry? Last Thursday. Last Thursday?  Was that because this case is on appeal? Well, no, Your Honor, we just learned last Tuesday, Your Honor, that his plea had been withdrawn. What did you ask for expedition of? I'm sorry. His first available hearing on his withholding of removal claim. We would like the Immigration Court to hear it as soon as practicable. Doesn't the vacating of the 1995 conviction simply end the framework under which there would be mandatory detention looking toward removal? Well, no, Your Honor.  He's still being held under mandatory detention for that small crime involving moral turpitude from 2005. He was charged with being inadmissible for that crime, which then falls under the first provision of the mandatory detention statute where it says if a crime falls... Don't there have to be two crimes involving moral turpitude? For aliens being found, I think the language is deportable for two crimes involving moral  I don't know if that's the case. He was being charged with being inadmissible under the first provision of the mandatory detention statute, which only requires the crime to fall within the provisions of 11H2. He was never legally able to be in this country, right? Correct. He is, to my knowledge, never had any type of lawful... Can I ask you a practical question? I understand your argument on DeMoore, but here's the practical point. Four justices join the majority opinion, I guess.  I thought that there may be times where the due process requires a hearing. Is there a real majority that would go with what you're saying in terms of DeMoore, that Section C says what it says and you don't get a hearing, period? In Justice Kennedy's concurrence, he said that there could be a circumstance where an individual hearing could be necessitated, perhaps as when Judge Pollack said, if the government delays proceedings. Here, there's nothing in the record showing that the government has delayed proceedings. In fact, it's the alien seeking relief from removal that has caused his proceedings to go for the count. But that's true, but what about... Is that a factor that we should consider? Also, the continuances that he has sought during his proceedings are a factor, which the court... Therefore what? You're not saying that he's... I didn't get any sense that the government was arguing that he was dilatory. No, not at all, Your Honor. Isn't pursuing one's legal remedies an appropriate, indeed, something that we lawyers encourage? Sure, but even in DeMoore, the Supreme Court upheld mandatory detention that was longer than average by acknowledging that the alien... So what's the majority rule in DeMoore, then? You have four justices who, according to your argument, say no hearing because there's a definite date. And that is when the decision on removal is made.  There are times where you might need a hearing. And what are we supposed to think in that? Well, Your Honor, we would just maintain that this is not a case that would warrant... But we're going to have to write a presidential opinion that applies. We have a lot of cases here in the circuit. So what's the rule? Well, the government's position is that pending removal proceedings, according to the statute 1226C and Supreme Court precedent in DeMoore, an alien can remain in removal proceedings. That's still an indefinite detention. Of course. But to the... Well, not indefinite. There is a termination point. So we're not talking about indefinite detention like Zabidas. We're talking about perhaps prolonged detention. But to the extent that the court doesn't agree with the government's position, there have been district courts who have taken a reasonableness approach to looking at the length of detention. Is there any problem, as Mr. Rabinowitz suggests, that a bond hearing of some sort... A bond hearing doesn't seem to me to be an overly complicated procedure. I mean, is there any difficulty in the government allowing for some sort of hearing to justify its detention? Well, Your Honor, we would disagree that a bond hearing should be automatically given after six months. I mean, even the Sixth Circuit in Lee said... Are there any practical difficulties in doing it? I can't speak to that, Your Honor, the practical difficulties of giving the immigration courts more to do on an automatic basis. But even the Sixth Circuit in Lee said that it doesn't take into consideration the immigration court schedule. It doesn't give them any flexibility. And also, the district court... Should the bond hearing be held by the district court? No, Your Honor. We would argue that the bond hearing should be held by the immigration court. I understand the district courts don't mind conducting bond hearings. And would it not be done on the basis of a habeas petition? Well, Your Honor, I think in the pre-final order removal context, it has to be done on the basis of a habeas petition. It has to be considered differently than the post-final order, where the courts who have held that they themselves, the district courts, can hold the bond hearings subsided to the language in Zavidas, saying that the habeas court has jurisdiction over this. But the underlying purpose for detaining somebody in a Zavidas case no longer becomes practically attainable once the alien proves that he cannot be removed from the United States versus this situation, where the underlying purpose for detaining the criminal alien is the pre-final order removal context always remains the same. It's then the question of whether or not it's reasonable, which the government maintains the district court could look at. And only upon a finding of unreasonableness of detention should the district court order the immigration court to give a bond hearing. We also agree with the ACLU's reading that if this court determines that 23060 or 122060  has been detained for a period such as this case, then it must necessarily be that his detention falls under 1226A, because he would have to fall within the immigration detention scheme somewhere. And the language of 1226A, where it provides the except for language with C, shows that... I just wanted to get back to a point. I'm still thinking of indefinite detention.  I'm thinking of indefinite detention to the length of detention, because there is always an end point. Well, there's no limit pending removal proceedings. The limitation placed on the mandatory detention is the removal proceeding itself, which by nature will end. Yeah, basically 1226 would trump any idea of due process for anyone detained in custody. No, Your Honor. We acknowledge that aliens such as Mr. Diep are entitled to due process. The situation that the government finds itself in this case is that he is not appealing the fact that he is removable from the United States, yet he seeks relief from the United States, relief from removal. And it's the due process he gets in seeking that relief is what brings us here. The issue is whether there's any reason to keep him in custody while the removal issue is determined. That's already taken months and months and months, and may take months more. It's a little hard to understand what the government's position is, which says, well, he shouldn't have a bond hearing, even though Judge Fuentes has pointed out that that's not a very demanding kind of an exercise. I got the feeling from your answer to Judge Fuentes that it was the government's position  that what they would do on the merits of cases before him and distract him with a bond hearing would be to undercut his usefulness. That can't be the government's position, is it? Well, Your Honor, Congress has mandated that criminal aliens who have committed certain enumerated offenses be taken into mandatory detention pending the removal proceedings. That is the government's position. But Justice Kennedy said at some point, somewhere it becomes unreasonable. You can't just have an indefinite detention. Correct. And, Your Honor, to that point, the government would argue that to the extent that you don't find that 236 or 1226C allows for detention to these periods, that courts have turned to a reasonableness approach, such as Judge Jones in the Ali case, which you will hear next. He did look to factors. We don't agree that he could then hold a bond hearing.  We think that an unreasonable detention should order the immigration court to hold a bond hearing where the alien would have to prove that he is not a flight risk under the regulations already provided under the 1226A alien. You suggest now that the alien has to prove that I am not a flight risk and I am not a danger to the community rather than the government proving the opposite? Correct, Your Honor. That's the current burden of proof that aliens who are detained under 1226A are not a flight risk under the 1226A have to prove. I suppose you could do that. They would just get up and say, I am not a flight risk and I am not a danger. I am a good person. Sure. And the government would have to rebut that. And that's similar to the burden of proof in Zavidak. When aliens have been held longer than six months, it's not just them that they get released. They have to make a showing that they are not going to be removed in the reasonably foreseeable future. Either way, in that context, there is a hearing. There is a hearing. Yes, but the district court could look at the reasonableness of their detention under 1226A. I asked your adversary, and you are from OILS, so you must know this. Does the INA have a provision where if the government is acting, and not that you would personally, but if the government just is not pushing the case and the guy is sitting in jail, where they could get some sort of relief to get the government moving, be it ICE or whether the IJ is just not listing a case? I'm aware of a regulation upon the BIA. I think it's 1003. I can't remember exactly the number of the regulation where the BIA must make a decision as is practically attainable. That's the only thing I could speak of. Okay. Anything else? Your Honor, as the court stated in DeMoore, the legal system is replete with situations requiring the making of difficult judgments as to which claims are to be made. There is no course to follow, and there is no constitutional prohibition against requiring parties to make such choices. Mr. Dieff has made those difficult choices to pursue relief. Numerous appeals. He saw a stay as recently as June 24th of his immigration proceedings, which I believe resulted in a delay of around two months. The exhibit that the ACLU filed showing that he received a withdrawal of his guilty plea came out in November, but he didn't inform the immigration court. Until January 18th, I think all of those should be taken into consideration. The fact that his removal proceedings have now been pending for nearly three years should not in and of itself raise constitutional concerns, nor should this court determine that his continued mandatory detention is unreasonable. The government asks that this court affirm the district court's determination that his detention is per se constitutional under 1226E and DeMoore v. Kim. Thank you. Thank you, Ms. Ferry. Mr. Birovitz. Thank you, Your Honor. I want to focus the remarks on the government's fallback position, which is that even if there's a limit, then you have to have this reasonableness approach where the district court needs to decide reasonableness. Just as a practical matter, this switches the burden onto the district courts. Basically, the district courts need to make this decision.  The district courts are not going to be able to protect the detainees who are pro se and cannot bring pro se habeas petitions. That's why to say that you are going to be required to suffer unlawful, prolonged mandatory detention unless you, an unrepresented detainee, can go into habeas, can go into district court and bring a habeas. Do you think this is a matter that should remain with the immigration courts? I think as a practical matter, you're not going to be able to protect those detainees and the district courts are going to continue to have to struggle with this. That's why the most practical response is to provide a time limit and to provide that, well, I'm saying two different things. One is, I think the most practical response is there has to be a way that individuals don't need to go into habeas in order to protect themselves from unlawful, prolonged mandatory detention. The second point is... I suppose it's a lot more expeditious if it's handled in the immigration courts than having to file proceedings in district court. Yes, Your Honor.  I think it's practical to have a time limit instead of this general reasonableness test. And I think that part of that is just evident from the government's broad interpretation. Even under their reasonableness test, they say that disturbed deops detention is reasonable. So I think you're going to continue to have divergent district court decisions about what is reasonable. At a minimum, this court should reject the government's suggestion that because an individual pursues relief from removal, the prolonged detention should not be considered unreasonable. That just needs to be rejected. I want to make one point as to the vacay chair, which the government suggests that Mr. Deop did not bring this to the court's attention until January. In fact, he brought it to the immigration court's attention in December and to the government's attention in December. At his hearing on Tuesday, the government was already aware of this. And then for some reason on Thursday, now they've changed their position. Are there any... One quick question, please. Are there any other factors that should be considered by this court in laying down a rule beyond the six-month presumption that you've argued for? Suppose we're not minded to think that we should set a number, but rather that progressively as the hearing...  The case for release, at least an opportunity to ask for release, becomes stronger. Are there any other factors to be considered? Well, Your Honor, I'm not sure that I can say there's other factors, but I think that there's several different ways to look at this. One is that at the bond hearing, the immigration judge can take into account the length of detention. We think that the bond hearing, the government's burden of showing that detention is justified, needs to be considered. And the longer the detention, the greater justification. So that's something that could be decided at the bond hearing. Alternatively, if this court is not comfortable with saying you need to get a bond hearing at six months, then I think there at least needs to be a hearing, and I would say before an immigration judge, at six months as to whether detention is reasonable. Because in some cases, six months of detention won't be reasonable. Maybe you're saying in some cases it would be. And I would say that the only factor there, though, that should counsel against the minimal protection of a bond hearing is if the individual has engaged in dilatory conduct. If the individual has engaged in dilatory conduct, then I believe you could say, then you don't get the bond hearing. End of the day, you're still under 1226C, not 1226A. But if you haven't engaged in dilatory conduct, and part of this is because  you haven't engaged in dilatory conduct, then you're under 1226C apply. You can come up with a construction which applies for a reasonable period of time, but then the question is how are courts and how are individuals going to gain the benefit of that? Very helpful. Can I ask you one more thing? Is there some distinction to be made between a person in immigration proceedings, removal proceedings, who's a lawful permanent resident and somebody who has no right to be in the country at all, I guess, like DEOP? Well, I think that there could be a distinction in terms of the amount of due process they're entitled to. They're clearly, somebody like Mr. DEOP is entitled to due process. Arguments could be made that lawful permanent residents have greater due process. In terms of construing the statute, it makes no difference because the statute applies the same way to lawful permanent residents and non-lawful permanent residents. And I'd refer to this Supreme Court's decision in Clark v. Martinez where it said because the statute had to be construed this way for people who are admitted to the immigration proceedings, the statute had to be construed this way for the United States. It also had to be construed this way for individuals who are inadmissible because the statute made no difference. But Mr. DEOP falls on the constitutional due process side of that line anyway. He's clearly entered the United States, has not already been admitted, and so he's entitled to due process. Thank you, Ms. Rabinowitz. Thank you. I guess we should go over now to Mr. Tan. You'll be arguing the class action? That's correct, Your Honor. Good morning. May it please the Court, my name is Michael Tan and I represent the appellants in this matter. I'd like to reserve two minutes for rebuttal. Very well. This case presents an issue of pure statutory construction. Whether a provision of the Immigration Act 1252F1 bars appellants from seeking a class-wide declaration that prolonged detention requires a bond hearing. The district court in this case granted the individual habeas claims challenging prolonged detention, but dismissed our class law. This was incorrect for two reasons. First, as recognized by the only circuit court to address this issue, I'm referring to the Ninth Circuit in Rodriguez, 1252F1 doesn't apply to declaratory relief. Second, and in the alternative, even if the provision were read to apply to declaratory relief, it doesn't cover claims that the government is violating its own statute. So turning to my first point, when read in context, it's clear that the statutory language doesn't cover declaratory relief. The statute itself makes no mention of declaratory relief. And indeed, a few lines above, at 1252E1, which is enacted at the same... Mr. Tan, address a preliminary issue. Of course, Your Honor. Like the other cases, not as interesting as the due process and class action issues. But the clients that you represent were in custody or in detention. They're no longer in detention. That's correct, Your Honor. Do they have standing to raise these issues on a class basis? Do they have standing to be class representatives given that they're no longer in detention? Right. So there's two issues, Your Honor. One is whether this appeal is moot, and it's not because they had live claims the time we filed the motion for class certification. On remand, we would likely have to find additional class representatives to represent the class. Does that answer? So they have standing to pursue the appeal.  Supreme Court's decision in Garrity, because their claims are no longer valid. Their claims, their class claims were still live. They were still in detention at the time we filed the motion for class certification. And you relate back to that time. Now, if this court were to rule in our favor in remand, we would likely have to go back and find new class representatives because they wouldn't have standing anymore since, as you point out, they're not in detention. Go ahead. Okay. So with my first point, when read in context, it's clear that the statute doesn't cover declaratory relief. The language doesn't mention declaratory relief. But when the motion enacted at the same time, 1252F1, Congress plainly provided that no court may enter, quote, declaratory, injunctive, or other equitable relief. Now, the government argues, nonetheless, the term restrain, the phrase in F1 is enjoin and restrain. And the government argues that the word restrain means declaratory relief, among other things. Well, it has to mean something different than enjoin, I suppose. That's right, Your Honor. There's an or between. What does it mean then? Well, here, Your Honor, we argue that it means temporary restraining orders. And that's because when read in the context of the statute, it's clear that it can't mean declaratory relief. The cardinal principle of statutory construction is that Congress presumably means what it says when it uses the term in one part of a statute and ignores it in another. And indeed, that's the very analysis the Supreme Court applied in the Ken in analyzing a different provision of 1252F2 when it read the word enjoin, it had to refer to stays of removal pending federal court review because Congress separately referred to stays elsewhere in the statute. That same analysis should apply here. The statute just doesn't enjoin or restrain, it doesn't say declaratory relief, but Congress did say declaratory relief in E1. Let me ask a peculiarly ignorant question. You argue that this is a situation in which we should follow the conventional rule that one should relate a statutory provision to its adjacent provisions and get a sense of the whole perfectly valid argument. But is this a kind of a statute in which one can really talk about these various sections of being closely interrelated in the composition of the statute? I get a sense that, though I can't document it, that maybe we're talking about a statute in which there is a statute in which different people are putting in different pieces at different times and it all wound up in an omnibus bill. So to think of it as an integrated statutory lineup is somewhat misleading. As I say, I claim ignorance in the question. Thank you, Your Honor. I think it's quite possible that a lot went into the statute. That's certainly the case. But at the end of the day, we're left with a text that Congress enacted and it's clear when you read the text as a whole, E1 says declaratory relief. Incidentally, it also imposes a bar on class certification, so we know Congress knew how to do that when it wanted to. And in contrast, F1 just says enjoin or restrain. You also have the titles here where the title of F1 refers to a limit on injunctive relief and E1 more broadly refers to limitations on relief. So I think even reading as the statute as a whole, it seems like the best reading of temporary restraining order. Let me ask then this. The statute clearly forecloses injunctive relief. Classified injunction,  Is it reasonable to suppose that Congress was perfectly hostile to the statute? Or was it hospitable to declaratory relief when declaratory relief is likely to have a successful, is likely to have a pretty strong influence adverse to the government? That's correct, Your Honor, but the remedies are still distinct because declaratory relief isn't backed up by a contempt sanction such that if the government fails to comply with the order, it can't be dragged into court and forced to pay fines. But you would expect, suppose you prevail and get declaratory relief, you would expect to utilize that relief, would you not? Perhaps to justify going in and getting directives as to the release of particular people? Certainly, Your Honor. I mean, as an initial matter, the statute, of course, imposes no bar on those but importantly, the remedies are still distinct because one isn't backed up by a contempt sanction. And I would also note, although we didn't address this in the brief, Congress has done this in a different context, the former three-judge statute where the concern was somewhat similar. Congress was worried about a single district court enjoining a statute that's unconstitutional but it wasn't worried about declaratory relief. And as the Supreme Court recognized in a decision called Kennedy against Mendoza-Martinez, declaratory relief didn't implicate those concerns because it wasn't backed up by a contempt sanction. Mr. Tan, isn't the effect pretty much the same? I mean, you're requesting declaratory relief but you're saying that there is an unconstitutional component to enforcement of 1226. Is that right? That's correct, Your Honor. Indefinite detention. Right. The only practical difference But isn't that the same as seeking the government's enforcement or enjoining or restricting the government from enforcing that statute? Well, it's not enjoining, it's a declaration. So ultimately, all I can tell you is that we need to focus on the statutory text which is fairly plain, quite plain, in fact, in excluding declaratory relief from the scope of F1. Is there a practical effect in what you're seeking because let us say that this forbidden is correct, that detention beyond a certain period is unconstitutional or you have to provide a bond hearing. And if we were to agree with her and we were to say that then all of the individuals in the class that you purport to represent would be bound by that ruling. That's right. So why do you need a class? Well, I think it depends how the court decides Mr. Dias' case. If the court holds that individuals are entitled to a bond hearing at six months, this case may very well be moot. However, if the court decides this case on narrower grounds, for example, his three years of detention. So is that correct that if we decide the first case in favor of the appellant, your case is moot? I think it depends what the court does in that case. If the court, for example, rules that at six months you get a hearing, this case very well may be moot because our class, the class we seek to have certified involves people who are detained for six months or longer. However, if the ruling is narrower based on, for example, his three years of detention or the posture of his removal case and his future proceedings, then we would certainly still have live class claims because we're representing or seeking to certify a class of people locked up for six months or longer. I also just want to go back to Judge Gerard's question on the difference between enjoin or restrain. Notably, the government does not provide a definition of restrain that would be distinct from enjoin. Its definition of restrain is to prevent from doing, to hold back, to keep in check. And that would sweep up enjoin. So for that reason, restrain already can't mean even if the statute is read to cover declaratory relief, it doesn't bar our claims that the government is violating the statute by subjecting individuals to prolonged detention without a hearing. As the Ninth Circuit recognized, 1252F1 may bar courts from declaring a statute inoperative, but it doesn't bar courts from declaring what a statute means. Now, the government argues in its brief that we aren't really alleging a statutory violation, that we're seeking to invalidate the detention statute, but that's simply incorrect. That presumes that the detention statute is clear in authorizing prolonged detention without a hearing for as long as it takes to revolve a removal case, whether that takes five years, seven years, ten years. And as Ms. Rabinovitz has explained, however, the statute is silent. So it's up for the court to determine whether under the canon of constitutional avoidance, there is a statutory violation. And as a result, that doesn't fall afoul of 1252F1. Unless there are further questions, Your Honor, I'll reserve the balance. Thank you very much. Thank you. Mr. Atkinson? Good morning, Your Honors, and may it please the Court, Theodore Atkinson for the appellees. Just a couple of housekeeping matters because this was set down as a consolidated matter and some of the questions from DOP have overlapped into. I'll leave first, Judge Chigaris. 1003.1E8 is the provision in the Code of Federal Regulations that provides that the BIA shall issue a decision and it shall do so as soon as practicable. I don't know, off the top of my head, if there is a similar provision with regard to the IJs, but I think that administratively one can go to the Board of Immigration Appeals or to the Executive Office of Immigration Review and request expedited proceedings on the part of the IJ. I'm not aware of any case in which an immigration judge has ever simply sat on a case and done nothing for years and years without administratively suspending it. So I just wanted to answer that. Judge Fuentes, you asked a question as to whether or not this case would be rendered moot by the absence now of Mr. Ali and Mr. Granat. I don't know the answer to that. It wasn't an issue that the parties briefed, but to an extent under the doctrine of the law of the case, their case is moot. And this is where what Judge Jones did in the Middle District of Pennsylvania and Ali, one foot is in DIOP and one foot is in this case. What notably the appellants have failed to acknowledge here today is that in that case, in Ali, in the case before this court, on August 10, 2009, Judge Jones issued a decision that did three things. Number one, it rejected the six-month bright-line rule that the appellants now stand before this court and ask for. They did not appeal that. It also... Can you tell us what the basis for the rejection was? Yes. Judge Jones surveyed the case law with regard to 1226C and in those cases where courts have rejected the government's position that D'Amour v. Kem and he said that he correctly noted that where courts have gone with a different... have examined what do we do then, they have looked at factors of reasonableness because setting a bright-line rule at six months does not allow for, as Judge Pollack pointed out, those instances where a detainee is acting without immigration court scheduling. It sets a one-size-fits-all standard even where the Supreme Court in D'Amour and this is, I believe, in footnote 15 said that one size didn't fit all for Mr. D'Amour even after acknowledging that five months was the average period of time for a removal proceeding. I tend to agree. I'm not sure if this is really part of your argument. Well, it's not, except... When you replace six months with a reasonableness standard I start to wonder what is reasonable when the position of the government is we can detain aliens indefinitely. Well, even if this court does not accept the government's argument and I think Ms. Prairie did an excellent job of arguing, but if the court disregards that... I would suggest that she did not. We have to do something about standards. But if you're trying to figure out a standard... Maybe her standard is correct. I don't know, but we have to consider alternatives as well. In considering those alternatives, and we've argued what the alternative standard should be, it should do what the court did in Ali, and that is to say there comes a point looking at Justice Kennedy's concurrence, there may come a point at which continued detention becomes unreasonable. It is the job of the district court at that point, and this is... Six months. That's incorrect. Is it correct that he said it or it's incorrect? Well, no, it's correct that he said six months does not work, but it's incorrect that six months is a workable standard that takes into account the flexibility of the immigration court. So if you're not going to accept the government's position, you can't accept their six-month position, and that leaves you a middle area, which we think Judge Jones in the alternative got correct, which is you look at factors of reasonableness which can take into account dilatory tactics on the part of the alien, foot dragging by the government, whether the alien can test removability, the alien's immigration status. How do you bring all that to the attention of a decision-maker? You bring it through a petition for rid of habeas corpus. That's back in the district court. It's back in the district court, and if the judge determines that continued detention is unreasonable, then it goes before an immigration judge for a bond fee argument. Isn't it more efficient though, as Ms. Rabinovitz suggested, let the executive branch of government, where immigration law really should reside, resolve this detention issue? Except one failing on the part of Ms. Rabinovitz to point out to this court is that immigration judges have jurisdiction only to consider flight risk and danger. They cannot consider the reasonableness of continued detention with regard to the habeas corpus. Flight risk and danger are the standards for continued detention under 1226. That's correct, but Justice Kennedy, in acknowledging that while it is constitutional and may continue for a period of time beyond six months, as they did in Des Moines, there may come a point at which it becomes unreasonable, at which point the alien has a remedy in a district court with a habeas petition. And if you look at cases in which this has been done in the middle district of Pennsylvania, the courts that have followed Ali in this circuit have found that in some cases, yes, as a matter of fact, it is necessary because continued detention is reasonable. And in other cases, on a case-by-case basis, have said no, it's not reasonable at this point, now you must have a bond deal. I thought it more respectful to our separation of powers to let the executive branch of government handle these immigration issues. I thought it would have been preferred even by the executive branch because that's where  What I'm doing at that point is you're saying every alien detained beyond six months gets a hearing before an immigration judge. And I don't know if the government has taken the alternative position that frankly, we would prefer a reasonable standard that comes up in this court because of the burden placed on immigration judges. I think we're talking about a presumption. I'm not sure how the immigration judges now determine whether continued detention is reasonable, not based on flight risk or danger, but on these constitutional due process issues. I'm not sure that's within their jurisdiction, which is why the government has taken the position that as an alternative, if you don't accept the government's primary position, you should do what Judge Jones did in Ali, with the exception that the bond hearing should be with the case you're arguing right now. But right. The difference between I did touch on it last time, but it does have to do with class. Is there a difference between lawful permanent permanent residents who are being detained under 12 26 C and people who are just inadmissible from the start? Should should one get it? Is should should the admissible folks not get a hearing? Well, I there is a distinction based on status and without going into too great of detail because meeting up my time on the on the class issue. But there is certainly a difference between arriving aliens, aliens who have never made an entry into the United States and those who have made an entry into the United States. And there is there are a number of cases that discuss the different rights between them and heightened rights that an LPR may have. And a lot of those cases come out of the Ninth Circuit. But that is something that certainly can and should be considered in determining whether or not continued detention is, in fact, reasonable because that brings into the balance the due process rights of the alien on one side and then the other considerations on the other. Speaking of the Ninth Circuit, the Ninth Circuit has issued an opinion that says that class action is appropriate for declaratory relief. And respectfully, Mr. Tan's position, 100 percent. And respectfully, they got it wrong because what these what the Ninth Circuit did there and there were essentially three areas on the part of the Ninth Circuit. First, the Ninth Circuit said that restraint must mean something. Right. I think everybody agrees that restraining must have operative effect in addition to enjoyment. Interestingly, appellants take the same position as the Ninth Circuit, which is, well, that can only mean can only mean temporary restraint, temporary restraining order or temporary injunctive relief. How does declaratory judgment restrain anybody? Judge Selya made the same point. Judge Selya did make the same point in Aravello. But again, the context of that case does matter, Judge Pollack, because he was looking at the issues that underlie Incan and Aravello and all of the other cases, which is what is 1252? What is 1252 F2 mean? And does stay of removal fall within the term enjoy? And so there wasn't really an examination of whether declaratory, none of those cases. Examined whether declaratory relief fell within F1. Those all contrasted F2 against F1 and noted, well, look, Congress didn't include the language in F2 that it did in F1, which would be broad enough to perhaps include stays. It only included enjoy under F2. So in looking at F1, it limited the interpretation of F2. But Judge Selya did not, was not confronted with whether or not declaratory relief fell within the term restrain. And we think that Judge Jones got it right because restrain has plain meaning. And appellants do not argue. I'm sorry? Restrain has a plain meaning? Restrain has a plain meaning. And following traditional principles of statutory construction, Judge Jones looked at what does restrain mean? He looked to dictionary definitions, which his court has repeatedly said is perfectly appropriate. And he said that restrain means to limit, to constrain, to narrow. And then he looked at what is the purpose of their action? Their action is to say 1226C, after a certain period of time, after prolonged detention, when it becomes constitutionally problematic, does not apply, simply ceases to operate with regard to these aliens. What they're arguing under the doctrine of constitutional avoidance is if prolonged detention under 1226C is not constitutionally permissible, then it cannot apply to the continued detention of those aliens. At that point, it ceases operation, and 1226A governs the continued detention, and they get a bond hearing. So it is completely disingenuous for appellants to stand here and say that it is merely a, they're trying to remedy a, quote unquote, violation of 1226C. They're trying to cease its operation with regard to an entire class of aliens. Mr. Atkinson, I, Judge Jones' opinion was in many ways very compelling. But I must say, I was underwhelmed by his construing of a statute by taking restraint and looking it up in the dictionary. That hardly seems to me a pertinent way for a judge to be really construing this complex statute, especially given the very limited, very limited legislative history that we have, which seems to me to the extent that it exists at all, and I'm talking now about the House report on the predecessor bill, which ultimately was wrapped into the omnibus bill. That paragraph, which, which the House doesn't seem to me to support the kind of construction that you have. That obstacle, as the committee, that is the injunctive obstacle, would not render a declaratory judgment and advisory opinion. The court could still provide a definitive determination of the legal rights of the parties. I beg your pardon. That's not, I'm sorry, that's not the legislative history that I had in mind. These limitations, this is what the committee said, do not preclude challenges to the new procedures, but the procedures will remain enforced while such lawsuits are pending. Doesn't that suggest that the statute clearly precludes injunctions, but does not preclude other challenges of which a declaratory relief would be a good example? I disagree, Your Honor. And let me just say why. With regard to whether or not, at first, this court has repeatedly said that you look not first to the legislative history, but you look to the plain meaning of the statute. And if the plain meaning of the statute is, let me grant you this, let's say it's, for argument's sake, let's say that restraint is ambiguous. Then the question is, well, could declaratory relief fall within the ambit of restraint? And you would look to the legislative history and you would look to other aspects that the opponents have pointed out. But one thing remains clear. If Congress's intent was to stop injunctive relief, and I see that my time has expired, may I finish answering the question? If Congress's intent was to stop class-wide challenges in a way that would fix the executive's ability to apply a particular statute through injunctive relief, and I think that everybody in this court would have to acknowledge that for the most part, when declaratory judgments are brought, they are also brought with a request for injunctive relief in many, many cases. That is, that the declaratory relief they seek here, which would affix the rights with regard to every single member of the class in a way that would be permanently binding on the government, not merely persuasive, binding on the government, and would be in this court's words in national union, practically indistinguishable from injunctive relief, then even if you find, Judge Pollack, that restraint has some ambiguity to it, nevertheless, in the context of the statute and the congressional purpose, what they are doing falls well within what Congress was intending to prevent in this case, and that's consistent with this court's case law, and it's consistent with the congressional intent. One further question. I had hoped that I would hear from the government some response to the argument made by the counsel for Ali, that with respect to the very thoughtful analysis of the statute by Professor Newman, I found no reference in your brief to the Newman article, and perhaps you can provide  I won't begin to canvas everything that Newman said, but I think he made one particular observation with respect to how to construe 1252F1. It seems to me quite compelling. The reservation to the Supreme Court of Authority, denied to all other federal courts to provide injunctive or restraining relief, has no operative meaning, Professor Newman pointed out, unless applications for declaratory relief, whether granted or denied, can ultimately be appealed to the Supreme Court. Without the opportunity for declaratory relief, said Professor Newman, the language of reserving authority of the Supreme Court is numatory. Well, it's numatory then even in the cases that they admitted to plots. Because with what Judge Newman is saying, and they have adopted by incorporation, by reference, if what, and this may take me a few seconds to get out, but let me try and set this up. They're saying that if you retain the jurisdiction of the Supreme Court to enter injunctive or restraining relief, then a case has to get to the Supreme Court somehow. And the only way a declaratory, that kind of relief can get to the Supreme Court is through a request for declaratory relief. But it can also get to the court through a request for injunctive relief. And so if you exclude jurisdiction for everyone except that jurisdiction and for those causes of action that may come to the Supreme Court, then that nullity applies not just to a request for declaratory relief in a class-wide action, but also a request for injunctive relief in a class-wide action. But we know that injunctive relief is unavailable. So that doesn't even become an issue that would get to the Supreme Court. But we only know that it's unavailable because we are deciding that the term enjoined includes injunctive relief. But if Professor Newman is correct with regard to declaratory relief, even though he didn't consider it, his analysis must also apply to injunctive relief. In other words, the only cases that can be over which appellate and district courts are deprived of jurisdiction are those cases in which the Supreme Court has original jurisdiction. The more reasonable and that may be an ambiguity with regard to the reservation of authority to the Supreme Court, but the most reasonable interpretation of that, I think, is that what Congress was able to do is that with the exception of the Supreme Court, nobody has jurisdiction with regard to these kinds of causes of action. And it may be the case that Congress later allowed or created an original jurisdiction on the part of the Supreme Court to do exactly that which it permitted the Supreme Court to do under 1252F1. But I think if you have to read... Congress wouldn't be able to do that, wouldn't be able to expand the original jurisdiction of the Supreme Court. Which may very well be why they said we are not going to... In a recent case called Marbury. I'm not familiar, Your Honor. But I think that that is probably why then Congress said, whatever we're saying at this point, talks about the district courts and the federal appeals court, we're not talking about the jurisdiction of the Supreme Court. You mean you're not familiar with Marbury? I am familiar with Marbury. Even though it's not in the circuit. It is not, Your Honor. Thank you. Thank you, Mr. Atkinson. Mr. Tan? Is it Mr. Tan? I was going to do the rebuttal because it seems that Mr. Atkinson spent most of his time addressing the op as opposed to the... We don't really have any rebuttal. Very good.    right and you obtain a declaratory relief that the statute is constitutionally infirmed. Would you be willing to do that? Would you be willing to do that? And then there's a violation. How would you remedy... How would you proceed based on the relief that you got? An individual would go in and seek an injunction in an individual  And as Mr. Tan mentioned... It seems like you're getting in the back door which you can't get in the front door. Except as Mr. Tan mentioned, the statute doesn't preclude injunctions in individual cases. That would not provide a class-wide injunction. It would mean in this individual case they're enjoined. With the court's permission, what I would like to use my time for is just to address the government's arguments regarding Judge Jones' approach and urging this court to adopt it because we think that approach and I believe I sort of addressed it somewhat in my first... in my argument but I would like to just clarify it to the extent it's not. We believe that approach is both unworkable and wrong. It's unworkable precisely for the reason we said is it requires everybody, unrepresented detainees to go in and bring a habeas action. So it's unworkable because most of those individuals can't go in and bring a habeas action and it also means that all the district courts are burdened by this. It's also wrong because all of those different factors that Judge Jones set out aren't relevant to the question of whether mandatory detention is unreasonable, whether mandatory detention has extended beyond a reasonable period of time. The issue here is... Well, IJ's empowered... His argument was IJ's can't make those determinations, they just aren't allowed to make them. Two responses. I don't believe that that's true. I believe that the BIA has said that immigration judges can consider whatever factors they want in terms of deciding bond. In any event, the issue in the bond hearing is going to be is the person in danger of flight risk? Just to clarify, the issue is whether at a certain point mandatory detention is unreasonable. It's not whether detention is unreasonable, it's whether mandatory detention is unreasonable. Our position is that that has to do with how long the detention is because the deprivation of liberty... The due process issues... Detention is mandatory under the statute. Did you mean indefinite? All that I'm saying is how long it can be mandatory because the statute doesn't say... The statute says the government must detain. It doesn't say for how long. Right. That's the issue. The issue is the length of that detention. Our position is that the due process concerns come up because of length of detention, not other factors because the deprivation of liberty is greater. The Supreme Court civil  does not provide a sufficient justification and adequate procedural protection. So our position is that the length of detention is the only issue that's important except if the individual is responsible for expanding their detention for dilatory reasons. Thank you, Ms. Rabinowitz, Mr. Tan, and Mr. Prairie, and Mr. Atkinson. Very well presented arguments and very difficult issues. We'll take the case under advisement. Thank you very